## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

BRADLEY FRICKEY,
BRIAN FRICKEY, AND WILLARD
LEE FRICKEY,

        **Plaintiff,**

**v.**

MARK ALAN THOMPSON, LARRY
DEAN WINCKLER, JARED H. BRODY,
BRADLEY A. BROTHERS, G. DANIEL
PRUSHNOK, DAVID M. PRUSHNOK,
HORIZONTAL EXPLORATION, LLC,
MID-EAST OIL CO., and MARCELLX,
LLC,

        **Defendants.**

**Case No. 14-cv-02189-DDC-TJJ**

## MEMORANDUM AND ORDER

Plaintiffs Bradley Frickey, Brian Frickey, and Willard Lee Frickey bring this lawsuit against several defendants, including David Prushnok, Daniel Prushnok, and MarcellX LLC ("the Moving Defendants"). Plaintiffs seek to recover some $1,200,000 they invested in an allegedly fraudulent scheme that defendants represented as an oil and gas development in McKean County, Pennsylvania (the "Swamp Angel Property"). Their lawsuit asserts claims for civil conspiracy, fraudulent inducement (misrepresentation), fraudulent inducement (concealment), violation of Section 10(b)(5) of the Securities Exchange Act, violation of the Kansas Uniform Securities Act, and unjust enrichment. Doc. 20 at ¶ 1. This matter comes before the Court on the Moving Defendants' Motion to Dismiss or, in the Alternative, Transfer (Doc. 46). Plaintiffs have filed a response opposing the motion (Doc. 52), and the Moving Defendants have submitted a reply (Doc. 54). After reviewing the arguments asserted in the

parties' briefs,[1] the Court denies the Moving Defendants' motion for the reasons explained below.

## I.     Factual Background

Plaintiffs' Second Amended Complaint (Doc. 20) alleges the following facts, which the Court accepts as true for the purpose of this motion.[2]

### A.  The Parties

Plaintiffs Brad Frickey and Brian Frickey are residents of Kansas.  Plaintiff Willard Lee Frickey resides primarily in South Dakota, but maintains a home, an office, and business interest in Kansas.  Defendants David Prushnok and Daniel Prushnok, residents of Pennsylvania, were 50 percent owners of defendant MarcellX LLC ("MarcellX").  Mark Alan Thompson, another defendant in this case, owned the other 50 percent.  MarcellX is a limited liability company organized under Pennsylvania law.

### B.  The Fraudulent Scheme

Defendant Thompson formed a petroleum exploration company called Horizontal Exploration, LLC (also a defendant in this lawsuit), which purports to be "an exploration and production company with a mission to profit from the utilization of advanced drilling technologies in the proven and well-known oil producing sands of the Appalachian Basin."  Doc. 20 at ¶ 19.  In 2012, Horizontal Exploration formed an oil and gas partnership, called Horizontal

---

[1]     In their response brief, plaintiffs requested oral argument on this matter.  Doc. 52 at 1.  The parties have set forth their positions effectively in their briefs and so, the Court concludes that oral argument would not assist it in resolving the motion.

[2]     *See Nixon v. City and Cty. of Denver*, 784 F.3d 1364, 1368 (10th Cir. 2015) (accepting as true all well-pleaded factual allegations in the complaint and viewing them in the light most favorable to the plaintiff on a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) (quotation omitted)); *Pierce v. Shorty Small's of Branson Inc.*, 137 F.3d 1190, 1192 (10th Cir. 1998) (holding that a plaintiff "may rest on the well-pled facts in the complaint to oppose a motion to dismiss for improper venue, but only to the extent that such facts are uncontroverted by defendant's evidence" (quotation omitted)); *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995) (explaining that on a motion to dismiss for lack of personal jurisdiction, "[t]he allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits." (quotation omitted)).

Fund I ("Fund I"), for the stated purpose of drilling oil and gas wells in Pennsylvania. Plaintiffs, among others, invested in Fund I during August and September of 2012.[3]

Soon after securing plaintiffs' investment in Fund I, Mr. Thompson began to solicit more money for what he represented as a second oil and gas partnership called Horizontal/Mideast Fund II ("Fund II"). On September 14, 2012, Mr. Thompson met with plaintiffs in Hays, Kansas to begin discussions about plaintiffs' potential investment in Fund II. On February 15, 2013, Mr. Thompson promoted to plaintiffs "'another drilling program' based on the 'results we're seeing' in an area called Swamp Angel . . . ." Doc. 20 at ¶ 28. Mr. Thompson copied David Prushnok and Daniel Prushnok on this correspondence to plaintiffs about the Swamp Angel Property. Mr. Thompson had purchased the Swamp Angel Property using MarcellX. Mr. Thompson continued to send solicitations to plaintiffs over the next few months via email.

On May 28, 2013, Mr. Thompson met with plaintiffs at Gutch's Bar & Grille in Hays, Kansas. At that meeting, Mr. Thompson introduced plaintiffs to Larry Winckler, who he claimed was "an expert driller and member of the Fund II management team." Doc. 20 at ¶ 42. Mr. Thompson and Mr. Winckler told plaintiffs they had "raised $16 million for Fund II, received approval to begin a major pipeline in three weeks, and planned to drill by July 2013." *Id.* at ¶ 47. They also gave plaintiffs a power point presentation, which pitched Fund II as "'low cost' with 'low risk stable cash flows,' anticipating a full capital return in 24 months." *Id.* at ¶ 49. Mr. Thompson also represented to plaintiffs that he had contributed his own capital to Fund II as evidence of commitment to the project. But, in fact, Mr. Thompson had not contributed any capital to Fund II. Mr. Thompson and Mr. Winckler gave the same power point presentation and made the same representations about Mr. Thompson's own capital contribution at a meeting with

---

[3]      Plaintiffs' investment in Horizontal Fund I was actually, at least in name, an investment of their trust, "Willard Lee Frickey TTEE U/A DTD 9/8/99." *See* Doc. 54-1 at ¶ 2.

a different investor group in Wichita, Kansas the day before the meeting at Gutch's Bar & Grille. Plaintiffs allege that, in reality, Fund II did not exist and defendants were not planning to use the solicited funds as they had represented to plaintiffs.  Plaintiffs contend that defendants instead planned to divert the funds for their own use and benefit as described below.

Mr. Thompson continued to solicit plaintiffs' investment after the meeting in Hays.  On June 4, June 17, and June 20, 2013, Mr. Thompson sent email solicitations to plaintiffs.  The June 4 email to plaintiffs described Fund II as "absolutely Oil and Gas proven areas" and warned plaintiffs to "act quickly if you have plans to proceed with our group again."  Doc. 20 at ¶ 57. The June 20 email claimed that road construction for Fund II had commenced.  Based on the representations made about Fund II, plaintiff Willard Lee Frickey electronically transferred $1,000,000 from his bank account in Hays, Kansas to an account controlled by defendants on July 8, 2013.

In an attempt to secure additional investment from Brad Frickey and Brian Frickey, Mr. Thompson emailed plaintiffs on July 16, 2013, reporting that Fund II "has 20 locations already cut and permitted."  Doc. 20 at ¶ 65.  Plaintiffs allege this was a false representation because Fund II did not have 20 locations already cut and permitted as of that date.  Mr. Thompson followed up with additional emails designed to solicit funds on August 11 and August 28, 2013, containing allegedly false representations about Fund II's progress.  On August 28, 2013, Robert Sparks[4] emailed plaintiffs asking that they "act quickly . . . to ensure your position with the fund and not miss out."  *Id.* at ¶ 78.  Based on the representations made about Fund II, Brian and Bradley Frickey electronically transferred $200,000 from their bank account in Hays, Kansas to an account controlled by defendants on August 30, 2013.

---

[4]     Plaintiffs named Robert Sparks as a defendant in this action but voluntarily dismissed him from this lawsuit on February 9, 2015 (Doc. 55).

Plaintiffs allege that they would not have transferred the money to invest in Fund II had they known defendants were misrepresenting facts and concealing the true facts.  As described in the next section, they assert that defendants used the money plaintiffs invested in the non-existent Fund II to pay their own debts and to develop wells for personal profit.

### C.  The Involvement of MarcellX and the Prushnoks

The Second Amended Complaint alleges generally that defendants Daniel and David Prushnok actively participated in the fraud or, alternatively, that they were knowingly complicit in it.  During the times relevant to the Second Amended Complaint, David and Daniel Prushnok, along with their brother Butch Prushnok, collectively owned 50% of MarcellX.  They also acted as agents of, or conspired with, the other defendants when they concealed facts and presented fraudulent representations to plaintiffs to defraud them of $1,200,000.

The Second Amended Complaint also alleges specific facts about the Moving Defendants' involvement in the scheme.  David and Daniel Prushnok (hereafter "the Prushnoks") have known Mr. Thompson for decades, and they were co-owners in MarcellX together.  The Prushnoks controlled the financial decisions and directed the activities of MarcellX during the time plaintiffs were allegedly defrauded.  Mr. Thompson initially acquired the Swamp Angel Property (represented as the location for drilling sites for Fund II) using MarcellX.  And Mr. Thompson copied the Prushnoks on the initial emails promoting Fund II to plaintiffs.

Plaintiffs allege that the Prushnoks benefitted from the fraud against plaintiffs.  The Prushnoks wanted to divest their MarcellX ownership because payment on a large bank loan that they personally guaranteed for MarcellX was near due.  The Prushnoks requested that Mr. Thompson find money to buy out their share.  Mr. Thompson met with the Prushnoks sometime around April 17, 2013, to discuss how they would restructure debt and ownership of MarcellX after Mr. Thompson acquired the money to buy out the Prushnoks' share.  They agreed that Mr.

Thompson would pay the Prushnoks cash for interest in MarcellX and would facilitate their removal as guarantors from the MarcellX bank loan.  Plaintiffs allege that it was for this reason—to acquire the cash to buy out the Prushnoks—that Mr. Thompson and other co-defendants entered Kansas to solicit investments fraudulently from plaintiffs.  They allegedly planned to use plaintiffs' $1,200,000 to restructure the debt and ownership of MarcellX—not to drill oil and gas wells for the benefit of plaintiffs.

The Second Amended Complaint alleges other facts supporting plaintiffs' theory about the Moving Defendants' involvement.  For example, plaintiffs allege that Mr. Thompson sent an email to Horizontal Exploration consultant Andrew Welty on August 20, 2013, requesting an "absolute date that the 1,200,000 would be available to pay over to Prushnok so they could pay down bank and assign over their interests."  Doc. 20 at ¶ 72.  This email refers to the exact amount the defendants ultimately convinced plaintiffs to invest, which plaintiffs contend, shows defendants' intent to use plaintiffs' money for the conspiracy, rather than for drilling oil and gas wells to benefit the investing plaintiffs.

On October 14, 2013, plaintiffs visited what they thought was the Fund II drilling site in Pennsylvania with Mr. Thompson and Mr. Sparks.  Defendants allegedly staged the site by bringing in drilling equipment to mislead plaintiffs about funding and activity levels.  Plaintiffs also saw two wells during this visit and additional locations for the alleged drilling of more wells.  Plaintiffs claim that they directly or indirectly paid the cost to drill the wells and permit the additional locations, but they have not received any proceeds from the production of these wells.  Instead, defendants have retained ownership of the wells and kept all of the profits.  Plaintiffs assert that the Prushnoks had direct knowledge of the fraud that Mr. Thompson subjected the plaintiffs to on this site visit.

By November 2013, the Prushnoks had negotiated an extension for the MarcellX bank loan and decided they wanted full control of MarcellX and the Swamp Angel Property.  On January 16, 2014, David Prushnok asked Mr. Thompson to relinquish all of his interest in MarcellX and the Swamp Angel Property, while still remaining a guarantor on the MarcellX bank loan, in exchange for the Prushnoks "dealing with his 'unsecured creditors/vendors.'"[5] Doc. 20 at ¶ 97.  Plaintiffs allege that "unsecured creditors/vendors" included them, and plaintiffs assert that the Prushnoks strategized to strong-arm them into accepting only a fractional return of their $1,200,000 investment.  David Prushnok also told Mr. Thompson, "We have been more than cordial and supportive of your previous efforts to fix things, but it's now time to take responsibility." *Id.*

Plaintiffs allege the Prushnoks knew Mr. Thompson was misleading investors and encouraged him to do so for their own financial benefit.   Plaintiffs point to an email from Mr. Welty on February 19, 2014 to David Prushnok that said:  "David, just checking in to see if there is any progress with deadbeat Mark and his quest for the dumbest investor ever."  Doc. 20 at ¶ 100.  David Prushnok replied:  "Crazy Horse is still courting the Snake Oil guys in hopes of landing another ill counseled investor . . . ." *Id.* at ¶ 101.

In sum, plaintiffs assert in the Second Amended Complaint that the Moving Defendants, as agents or co-conspirators, entered Kansas to solicit money for an oil and gas partnership that never existed.  Instead of drilling oil and gas wells for the benefit of the investing plaintiffs as they had promised, David and Daniel Prushnok used this money to pay their own debts and to restructure MarcellX.

---

[5]     David Prushnok made this request in an email to Mr. Thompson.  He copied Daniel Prushnok and Butch Prushnok on that communication.

## II.     Analysis

The Moving Defendants have filed a Motion to Dismiss or, in the Alternative, Transfer (Doc. 46).  The Moving Defendants advance four arguments in their motion:  (1) the Court should dismiss the claims against them for lack of personal jurisdiction; (2) the Court should dismiss the claims against them because venue in this Court is improper; (3) in the alternative, the Court should transfer the action to the United States District Court for the Western District of Pennsylvania where a similar action is pending; and (4) the Court should dismiss the Fraudulent Inducement—Misrepresentation claim against MarcellX for failure to state a claim upon which relief can be granted.  The court addresses each argument in turn.

### A.  The Moving Defendants' Motion to Dismiss for Lack of Personal Jurisdiction

The Moving Defendants seek dismissal of plaintiffs' claims against them based on lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).  Plaintiffs bear the burden of establishing personal jurisdiction over defendants.  *Rockwood Select Asset Fund XI (6)-1, LLC v. Devine, Millimet & Branch*, 750 F.3d 1178, 1179–80 (10th Cir. 2014) (citation omitted).  But in the preliminary stages of litigation, a plaintiff's burden to prove personal jurisdiction is light.  *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1056 (10th Cir. 2008) (citation omitted).  Where, as here, the Court considers a pretrial motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, the plaintiff must make only a prima facie showing of jurisdiction to defeat the motion.  *Id.* at 1056–57 (citing *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998)).  "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant."  *OMI Holdings, Inc.*, 149 F.3d at 1091.  To defeat a plaintiff's prima facie showing of personal jurisdiction, defendants "must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction

unreasonable.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). Where defendants fail to controvert a plaintiff's allegations with affidavits or other evidence, the Court must accept the well-pleaded allegations in the complaint as true, and resolve any factual disputes in the plaintiff's favor. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

In a diversity action like this one, a plaintiff must show that exercising jurisdiction is proper under the laws of the forum state and that doing so comports with the Constitution's due process requirements. *Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.*, 17 F.3d 1302, 1304–05 (10th Cir. 1994) (citation omitted). Kansas' long-arm statute is construed liberally to permit any exercise of jurisdiction that is consistent with the United States Constitution. *Id.* at 1305; *see also* K.S.A. § 60-308(b)(1)(L) & (b)(2). Thus, it is unnecessary for the Court to conduct a separate personal jurisdiction analysis under Kansas law, and instead, the Court may proceed directly to the due process inquiry. *Federated Rural Elec. Ins. Corp.*, 17 F.3d at 1305; *see also Niemi v. Lasshofer*, 770 F.3d 1331, 1348 (10th Cir. 2014) (where the state's long-arm statute "confers the maximum jurisdiction permissible consistent with the Due Process Clause . . . the first, statutory, inquiry effectively collapses into the second, constitutional, analysis." (citation and internal quotation marks omitted)).

This due process analysis involves a two-step inquiry: (1) first, the Court must determine whether the defendant has "minimum contacts with the forum state such that he should reasonably anticipate being haled into court there;" and (2) second, if the defendant's actions establish such minimum contacts, the Court must then decide "whether the exercise of personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice." *AST Sports Sci., Inc.*, 514 F.3d at 1057 (citations and internal quotation marks omitted).

### 1.  Minimum Contacts

The due process clause permits the exercise of personal jurisdiction over a nonresident defendant so long as the defendant purposefully has established "minimum contacts" with the forum state. *Burger King*, 471 U.S. at 474.  The "minimum contacts" standard is satisfied by establishing either (1) specific jurisdiction or (2) general jurisdiction. *Rockwood Select Asset Fund*, 750 F.3d at 1179.  Here, plaintiffs argue that they have established specific personal jurisdiction over each of the Moving Defendants.  Doc. 52 at 10.

A court may exercise specific jurisdiction if:  (1) the out-of-state defendant "purposefully directed" his activities at residents of the forum state and (2) the plaintiff's injuries arose from those purposefully directed activities. *Newsome v. Gallacher*, 722 F.3d 1257, 1264 (10th Cir. 2013) (citation omitted).  The Tenth Circuit analyzes the "purposefully directed" requirement differently depending upon the cause of action alleged. *See Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008).  "In the tort context, we often ask whether the nonresident defendant 'purposefully directed' its activities at the forum state; in contract cases, meanwhile, we sometimes ask whether the defendant 'purposefully availed' itself of the privilege of conducting activities or consummating a transaction in the forum state." *Id.* (citations omitted).  "In all events, the shared aim of [the] 'purposeful direction' doctrine has been said by the Supreme Court to ensure that an out-of-state defendant is not bound to appear to account for merely 'random, fortuitous, or attenuated contacts' with the forum state." *Id.* (quoting *Burger King*, 471 U.S. at 475).

Last year, the Supreme Court addressed the kind of "minimum contacts" necessary to create specific jurisdiction. *Walden v. Fiore*, ___ U.S. ___, 134 S. Ct. 1115, 1121 (2014).  In a unanimous opinion, the Court explained, "[f]or a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the

forum State." *Id.*  The Court emphasized two related aspects of the defendant's relationship with the forum state that must exist for a court to exercise jurisdiction over a nonresident defendant. *See id.* at 1121–22.

First, the relationship between the defendant and the forum State must arise out of contacts that the "defendant himself " has created with the forum State.  *Id.* at 1122 (citing *Burger King*, 471 U.S. at 475).  "Due process limits on a State's adjudicative authority principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties." *Id.* (citation omitted).  The Supreme Court "consistently [has] rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff . . . and the forum State."  *Id.* (citation omitted).  "Put simply, however significant the plaintiff's contacts with the forum may be, those contacts cannot be decisive in determining whether the defendant's due process rights are violated."  *Id.* (citation and internal quotation marks omitted).

Second, the "minimum contacts" analysis must focus on "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there."  *Id.* (citations omitted).  Thus, the Supreme Court has found personal jurisdiction exists "over defendants who have purposefully 'reach[ed] out beyond' their State and into another [state] by, for example, entering a contractual relationship that 'envisioned continuing and wide-reaching contacts' in the forum State."  *Id.* (quoting *Burger King*, 471 U.S. at 479–480).  In addition, while "physical presence in the forum is not a prerequisite to jurisdiction, physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact."  *Id.* (citations omitted).  But a plaintiff "cannot be the only link between the defendant and the forum."  *Id.*  "Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him."  *Id.* (citations omitted).  To put it another way, "a defendant's relationship with a plaintiff or third party, stand-

ing alone, is an insufficient basis for jurisdiction." *Id.* at 1123 (citation omitted). "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Id.* (quoting *Burger King*, 471 U.S. at 475).

Here, plaintiffs have alleged that the Moving Defendants had sufficient minimum contacts with Kansas to subject them to jurisdiction in this Court. First, the allegations in the Second Amended Complaint, taken as true, establish that each of the Moving Defendants "purposefully directed" their activities at residents of the forum state. Plaintiffs allege that the Prushnoks "controlled the financial decisions and directed the activities of MarcellX at all times relevant to the Second Amended Complaint." Doc. 20 at ¶ 15. They also allege that, while executing these duties, the Prushnoks knowingly acquiesced or actively encouraged Mr. Thompson's scheme to fraudulently induce $1,200,000 away from plaintiffs for the hidden purpose of restructuring the debt and ownership of MarcellX. *Id.* at ¶¶ 30, 40, 72–74. According to plaintiffs, MarcellX had a substantial payment on a bank loan coming due soon, a loan that the Prushnoks had personally guaranteed. *Id.* at ¶ 29. To obtain funds to cover this payment, plaintiffs allege that they sent Mr. Thompson and Mr. Winckler (acting as agents of MarcellX) into Kansas to solicit fraudulent investments. *Id.* at ¶¶ 15, 28, 30, 31–32, 35, 41, 47, 56, 102. Plaintiffs also allege that David Prushnok and Daniel Prushnok encouraged Mr. Thompson to direct his fraud into Kansas to financially benefit MarcellX, and by virtue of their ownership in MarcellX and their liability on its bank loan, to benefit themselves as well. *See id.* at ¶¶ 15, 30, 56, 102. Finally, plaintiffs allege that the Moving Defendants' activities injured Kansas residents. *Id.* at ¶¶ 2, 3, 108, 115, 122, 127, and 132.

With these allegations, plaintiffs have established that the Moving Defendants "purposefully directed" activities in Kansas that caused injury to Kansas residents, thereby subjecting

them to personal jurisdiction in this forum.  *See, e.g., Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1076–77 (10th Cir. 2008) (holding that defendants were subject to personal jurisdiction in Colorado where plaintiff alleged that they "expressly aimed" conduct at Colorado); *Gov't Benefits Analysts, Inc. v. Gradient Ins. Brokerage, Inc.*, No. 10-2558-KHV, 2012 WL 1898859, at *6 (D. Kan. May 23, 2012) (concluding that a Nevada limited liability company was subject to jurisdiction in Kansas based on allegations that it conspired to misappropriate trade secrets and tortuously interfere with the contractual relationships and prospective business of a Kansas company, thereby resulting in injury to the Kansas company in the forum); *Dodson Int'l Parts, Inc. v. Altendorf*, 181 F. Supp. 2d 1248, 1253–54 (D. Kan. 2001) (holding that personal jurisdiction existed when a non-resident defendant allegedly had conspired with co-conspirators who had committed acts in Kansas in furtherance of a conspiracy that injured a Kansas resident); *Battenfeld of Am. Holding Co., Inc. v. Baird, Kurtz & Dobson*, 45 F. Supp. 2d 1109, 1115 (D. Kan. 1999) (concluding that a German company was subject to personal jurisdiction in Kansas where its agents committed fraudulent acts in Kansas that caused injury in the forum state).

The Moving Defendants argue that plaintiffs cannot hale them into this Court because they have no contacts with Kansas.  They note that the Second Amended Complaint makes no allegation that they ever have visited Kansas or that ever conducted business in this forum.  And the Moving Defendants contend that plaintiffs' "bare allegations" that they conspired with other defendants who may have entered Kansas are insufficient to subject them to jurisdiction here.  While it is true that one co-conspirator's presence in the forum does not automatically create jurisdiction over other co-conspirators, a co-conspirator may establish the minimum contacts necessary to exercise jurisdiction over other conspirators if the conspiracy is directed at the forum or substantial steps in furtherance of the conspiracy were taken in the forum.  *Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1070 (10th Cir. 2007).  The Moving Defendants argue that, like the

13

plaintiff in *Melea*, plaintiffs here make "bare allegations" of a conspiracy that are insufficient to subject the Moving Defendants, as co-conspirators, to jurisdiction in Kansas.  But, in *Melea*, the Tenth Circuit concluded that two key elements were missing—plaintiff made no allegation that the conspiracy was directed at the forum or that substantial steps in furtherance of the conspiracy had occurred in the forum.  *Id.*  In contrast, plaintiffs here have alleged both of these elements. Plaintiffs allege that the Moving Defendants dispatched co-conspirators to Kansas to obtain fraudulent investments from plaintiffs.  Plaintiffs also describe various communications sent by co-conspirators and directed to plaintiffs in Kansas in an effort to obtain fraudulent investments from them, thereby alleging substantial steps occurred in Kansas in furtherance of the conspiracy.  Thus, plaintiffs have alleged that the Moving Defendants committed purposeful acts directed at Kansas residents.

Second, plaintiffs also have alleged that their injuries arose from the Moving Defendants' purposefully directed activities.  Plaintiffs claim that the Moving Defendants encouraged Mr. Thompson to solicit fraudulent investments from Kansas and that the Moving Defendants conspired and agreed with Mr. Thompson to defraud plaintiffs out of $1,200,000.  These allegations sufficiently establish that plaintiffs' tort claims arise out of the Moving Defendants' conduct directed at Kansas residents.  *See Dudnikov*, 514 F.3d at 1079 (finding specific jurisdiction where plaintiffs' claims were based on defendants' threats to and interference with plaintiffs' business in Colorado);  *Gov't Benefits Analysts, Inc.*, 2012 WL 1898859, at *6 (concluding that third-party plaintiffs' tort claims arose out of third-party defendant's conduct aimed at misappropriating trade secrets and tortiously interfering with a Kansas corporation).  The Court thus concludes that plaintiffs have met their burden by establishing that the Moving Defendants have sufficient minimum contacts with the forum state.

## 2. Fair Play and Substantial Justice

Even when a defendant's actions create sufficient minimum contacts, the court must still decide whether the exercise of personal jurisdiction "would offend traditional notions of fair play and substantial justice." *Newsome v. Gallacher*, 722 F.3d 1257, 1271 (10th Cir. 2013) (citation and internal quotation marks omitted). "'Such cases are rare.'" *Id.* (quoting *Rusakiewicz v. Lowe*, 556 F.3d 1095, 1102 (10th Cir. 2009)). "The defendant 'must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Id.* (quoting *Burger King*, 471 U.S. at 477).

To determine whether the exercise of jurisdiction is unreasonable, courts consider the following five factors:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.

*OMI Holdings, Inc.*, 149 F.3d at 1095 (citing *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 113 (1987)). The Court determines that the first, second, and fourth factors support a finding that the exercise of personal jurisdiction over the Moving Defendants is reasonable.

Under the first factor, the Moving Defendants provide no reason to conclude exercising personal jurisdiction over them in Kansas would impose a substantial burden. While the Court recognizes that it may be inconvenient for the Moving Defendants, as Pennsylvania residents, to defend a case in Kansas, it is not constitutionally unreasonable to require a defendant to defend a lawsuit out of state "[i]n this era of Internet communications, faxes, telecommunications, and relatively inexpensive travel." *Rainy Day Books, Inc. v. Rainy Day Books & Cafe, LLC*, 186 F. Supp. 2d 1158, 1166 (D. Kan. 2002). Under the second factor, the forum state—Kansas—has an

interest in resolving the dispute.  *Vestring v. Halla*, 920 F. Supp. 2d 1189, 1196 (D. Kan. 2013)

("States have an important interest in providing a forum in which their residents can seek redress

for injuries caused by out-of-state actors." (citing *Burger King*, 471 U.S. at 483)).  Finally, under

the fourth factor, the interstate judicial system's interests are best served by subjecting the Mov-

ing Defendants to suit in Kansas.  Here, several relevant witnesses are located in Kansas, and

Kansas law applies to the majority of the claims asserted by the Second Amended Complaint.

The Court also concludes that the third and fifth factors are neutral ones.  Under the third

factor, plaintiffs make no argument that they are unable to seek effective relief in a jurisdiction

other than Kansas.  Under the fifth factor, the Court has found no facts to establish that the

shared interest of the several states in furthering fundamental substantive social policies favors

one forum over another.

After considering *OMI Holdings'* five factor test, the Court concludes that the exercise of

personal jurisdiction over the Moving Defendants does not offend traditional notions of fair play

and substantial justice.  As noted at the outset, plaintiffs' burden of establishing personal juris-

diction over defendants in the preliminary stages of litigation is a light one. *AST Sports Sci., Inc.*,

514 F.3d at 1056 (citation omitted).  Plaintiffs have carried this burden and the Court thus denies

the Moving Defendants' motion to dismiss for lack of personal jurisdiction.

### B.  The Moving Defendants' Motion to Dismiss for Improper Venue

The Moving Defendants next argue that the Court should dismiss plaintiffs' claims

against them under Fed. R. Civ. P. 12(b)(3) because venue is not proper in this district.  Federal

statute makes venue is proper in:

> (1) a judicial district in which any defendant resides, if all defendants are residents
> of the State in which the district is located;
> (2) a judicial district in which a substantial part of the events or omissions giving
> rise to the claim occurred, or a substantial part of property that is the subject of
> the action is situated; or

> (3) if there is no district in which an action may otherwise be brought as provided
> in this section, any judicial district in which any defendant is subject to the court's
> personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).  Plaintiffs in this case assert that venue is proper in Kansas under § 1391(b)(2) because a "substantial part of the events or omission giving rise to the claim occurred" in Kansas.  Doc. 20 at ¶ 18.  The Moving Defendants disagree.  They claim that a substantial part of the events occurred in Pennsylvania, which is also the location of the "subject real property"—*i.e.*, the Swamp Angel Property.  Therefore, the Moving Defendants argue that venue is proper in the Western District of Pennsylvania, not Kansas.

But venue under § 1391(b) "is not limited to the district with the *most* substantial events or omissions."  *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1165 (10th Cir. 2010) (citations omitted).  Section 1391(b)(2) "instead 'contemplates that venue can be appropriate in more than one district . . . [and] permits venue in multiple judicial districts as long as a substantial part of the underlying events took place in those districts.'"  *Id.* at 1166 (quoting *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 356 (2d Cir. 2005)).

The Tenth Circuit has promulgated a two-part test for reviewing challenges to venue under section 1391(b)(2).  *Id.*  First, the court "examine[s] the nature of the plaintiff's claims and the acts or omissions underlying those claims."  *Id.* (citations omitted).  Second, the court determines "whether substantial 'events material to those claims occurred' in the forum district."  *Id.* (quoting *Gulf Ins.*, 417 F.3d at 357 (further citations omitted)).  To satisfy the substantiality requirement, a plaintiff must make a showing of "acts and omissions that have a close nexus to the alleged claims."  *Id.* (citing 17 James Wm. Moore et al., *Moore's Federal Practice* § 110.04[1] (3d ed. 2010) (stating that, when engaging in the substantiality analysis, courts "ought not focus solely on the matters that gave rise to the filing of the action, but rather should look at the entire progression of the underlying claim" (further citations and internal quotation marks omitted))).

Applying the Tenth Circuit's two-part test for determining substantiality, the Court first considers the nature of plaintiffs' claims and the acts or omissions underlying those claims. Here, plaintiffs allege claims for civil conspiracy, fraudulent inducement (misrepresentation),[6] fraudulent inducement (concealment), violation of Section 10(b)(5) of the Securities Exchange Act, violation of the Kansas Uniform Securities Act, and unjust enrichment based on defendants' fraudulent inducement of plaintiffs to invest $1,200,000, in what plaintiffs believed was a legitimate oil and gas partnership, but instead was used to pay down defendants' own debts and drill their own wells. Doc. 20 at ¶ 1.

Next, the Court examines whether substantial events material to plaintiffs' claims occurred in this district. The Second Amended Complaint alleges several events that occurred in Kansas and many of them are material to plaintiffs' claims. Plaintiffs allege that defendants solicited Kansas residents to invest in a fraudulent scheme, directed fraudulent communications to Kansas, physically entered Kansas to meet with plaintiffs and others to promote the fraudulent scheme, received money transferred from Kansas bank accounts, and caused injuries to plaintiffs in Kansas. Doc. 20 at ¶¶ 27, 28, 30–32, 35, 41–42, 45, 47, 49, 52–53, 55, 57, 59–61, 65, 67, 69, 76, 78, 80, 84, 96. These allegations suffice to establish that "a substantial part of the events or omissions giving rise to the claim occurred" in Kansas, thereby making venue proper here. *See Concert Water Techs., Inc. v. Hughes*, No. 10-1398-MLB, 2011 WL 765878, at *2 (D. Kan. Feb. 25, 2011) (concluding that a substantial part of the events occurred in Kansas because defendants negotiated their contracts through phone calls and emails with plaintiff in Kansas, plaintiff authorized payments from Kansas, and plaintiff sustained damages to its business in Kansas); *Multi–Media Int'l, LLC v. Promag Retail Servs., LLC*, 343 F. Supp. 2d 1024, 1033–1034 (D. Kan.

---

[6]     Plaintiffs assert their fraudulent inducement (misrepresentation) claim against MarcellX but not the Prushnoks. Doc. 20 at ¶¶ 109–114. Plaintiffs assert the remaining five claims against both MarcellX and the Prushnoks. *See generally* Doc. 20.

2004) (finding that plaintiff's receipt of fraudulent communications in Kansas demonstrated that a substantial part of the events giving rise to plaintiff's claims occurred in that forum, and thus venue was proper in Kansas).

The Court recognizes that other events giving rise to the claims in this case occurred outside Kansas in places such as Pennsylvania, where the Moving Defendants reside. But venue "is not limited to the district with the *most* substantial events or omissions" and "'can be appropriate in more than one district . . . .'" *Bartile Roofs, Inc.*, 618 F.3d at 1165 (quoting *Gulf Ins.*, 417 F.3d at 356). Instead, where the parties have engaged in communications between two states, a substantial part of the events may have occurred equally in both states. *See Multi–Media Int'l, LLC*, 343 F. Supp. 2d at 1033–1034 ("The contacts in this case consist entirely of oral, written, and electronic communications between both parties. Even if it is true that a substantial part of the events giving rise to Plaintiff's claim occurred in California, it is equally true that a substantial part of the events surrounding Plaintiff's claim occurred in Kansas." (citation omitted)); *see also Etienne v. Wolverine Tube, Inc.*, 12 F. Supp. 2d 1173, 1181 (D. Kan. 1998) (a substantial part of the events occurred in Kansas because "the primary events giving rise to this [breach of contract] action . . . occurred by means of communications between . . . two states," and "to the extent that these events occurred anywhere, they occurred almost as much in Kansas as in Alabama").

Because a substantial part of the events giving rise to plaintiffs' claims occurred in Kansas, venue is proper here. Consequently, the Court denies the Moving Defendants' motion to dismiss based on lack of venue.

### C.  The Moving Defendants' Motion to Transfer

As an alternative to dismissal, the Moving Defendants request the Court transfer this case to the United States District Court for the Western District of Pennsylvania. Title 28 U.S.C. §

1404(a) governs transfer of venue.  The statute provides:  "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).

The district court has broad discretion under § 1404(a) to adjudicate motions to transfer based upon a case-by-case review of convenience and fairness.  *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991).  "The party moving to transfer a case pursuant to § 1404(a) bears the burden of establishing that the existing forum is inconvenient."  *Id.* at 1515 (citations omitted).  "'Merely shifting the inconvenience from one side to the other, however, obviously is not a permissible justification for a change of venue."  *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167 (10th Cir. 2010) (quoting *Scheidt v. Klein*, 956 F.2d 963, 966 (10th Cir. 1992)).

The Tenth Circuit has listed the factors that a district court should consider in deciding whether to transfer an action pursuant to 28 U.S.C. § 1404(a):

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Chrysler Credit Corp.*, 928 F.2d at 1516 (citing *Tex. Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1967)); *see also Bartile Roofs, Inc.*, 618 F.3d at 1167 (citations omitted).

The Moving Defendants argue that the Court should transfer this case in the interests of judicial economy because, they contend, a lawsuit involving the "same exact subject matter" is pending in the Western District of Pennsylvania.  They assert that litigating these cases separately will inconvenience the parties and waste judicial time and resources.  Thus, the

Moving Defendants contend that the Court should transfer this case to the Western District of Pennsylvania to allow consolidation of the two cases in that district.

On July 2, 2014 (some two months after plaintiff filed this lawsuit in Kansas), 22 plaintiffs filed a complaint in the United States District Court for the Western District of Pennsylvania alleging causes of action arising out of alleged fraud during solicitation of investments in the Swamp Angel Property (Case No. 14-cv-00866-MPK, the "Pennsylvania Case"). *See* Doc. 54-1.  One of the 22 plaintiffs in the Pennsylvania Case is Willard Lee Frickey TTEE U/ A DTD 9/8/99, a trust organized under the laws of Kansas.  Doc. 54-1 at ¶ 2.  The Moving Defendants contend, based on information and belief, that the beneficiaries of that trust are plaintiffs in this action.  Thus, the Moving Defendants argue that plaintiffs are suing the Moving Defendants twice in two different venues seeking a double recovery.

Plaintiffs dispute that this action involves the same subject matter as the Pennsylvania Case.  Plaintiffs contend that the Pennsylvania Case involves different fraudulent schemes, different partnerships, different transfers of money, distinct damages, different theories of recovery, and different plaintiffs.  Plaintiffs argue that the Pennsylvania Case involves money lost by the 22 plaintiffs when they invested in Fund I in August and September 2012.  In contrast, plaintiffs contend that the claims in this case arise from defendants' fraudulent scheme that induced them to invest $1,200,000 in Fund II in July and August 2013.

Based on the parties' description of the Pennsylvania Case in their briefs and the Court's review of the Pennsylvania Complaint, the Court is not convinced that these cases involve the "exact same subject matter," as the Moving Defendants contend.  The Pennsylvania Complaint references Fund II—the 22 plaintiffs in the Pennsylvania Case allege that defendants proposed rolling plaintiffs' investments in Fund I into a separate, but non-existent, partnership (Fund II) thereby setting up an alleged Ponzi-like scheme where new investors would provide the cash

needed to fund the existing obligations to the Fund I investors.  Doc. 54-1 at ¶¶ 75, 80.  But the Pennsylvania Complaint does not appear to contain allegations that any of the 22 plaintiffs directly invested in Fund II, as plaintiffs allege in this case that they invested $1,200,000 in Fund II.  Instead, the claims in the Pennsylvania Case appear to arise out of the 22 plaintiffs' investment in Fund I only.  Consequently, the Court concludes that the judicial economy of transferring this action is questionable.  *See Mallinckrodt, Inc. v. E-Z Em Inc.*, 670 F. Supp. 2d 349, 358 (D. Del. 2009) (denying transfer where the extent to which two cases involved the same subject matter was unclear); *Goldstein v. RadioShack Corp.*, No. 6:06-CV-285, 2007 WL 1342533, at *5 (E.D. Tex. May 1, 2007) (concluding that the existence of a similar action in another court was a neutral factor where the proceedings were in a different posture and neither court had certified a class action).  The Court thus considers this factor neutral in its analysis of the Moving Defendants' transfer request.

The parties also dispute whether the convenience of witnesses, evidence, and the parties favors transfer.  The Court finds that this factor also is a neutral one.  While some of the witnesses and evidence are located in Pennsylvania, other witnesses and evidence may be found in Kansas.  Also, the location of the Swamp Angel Property is not dispositive.  While this case involves defendants' solicitation of plaintiffs to invest in oil and gas development on the Swamp Angel Property in Pennsylvania, plaintiffs' claims center on defendants' fraudulent acts directed at Kansas residents when soliciting that investment.  The investment property's Pennsylvania location is not a significant fact that makes Pennsylvania a more convenient location for this lawsuit.

Turning to the other factors identified by the Tenth Circuit in *Chrysler Credit Corp.*, the Court finds that the balance of equities disfavors the transfer request.  Plaintiffs here bring tort claims under Kansas law.  Therefore, the advantage of having a local court determine questions

of local law weighs against transfer.  Also, plaintiffs already have obtained a consent judgment against Mr. Thompson in this action (Doc. 11).  The Court finds that it will not serve the interests of justice to transfer a case at this posture where the Court already has entered a judgement against one of the defendants.  Finally, plaintiffs' choice of forum disfavors transfer.  Plaintiffs chose this forum, and the Court finds no "strong" reason to disturb their choice.  *See Scheidt*, 956 F.2d at 965 ("[U]nless the balance is strong in favor of the movant the plaintiff's choice of forum should rarely be disturbed." (internal quotation marks omitted)).

Considering all these factors, the Court concludes that the Moving Defendants have failed to carry their burden to transfer venue under 28 U.S.C. § 1404(a).  The Court determines that a transfer here would merely shift the burden on the parties from one side to another, and this "obviously is not a permissible justification for a change of venue."  *Scheidt*, 956 F.2d at 965.  Thus, the Court denies the Moving Defendants' motion to transfer.

### D.  Defendant MarcellX's Motion to Dismiss under Rule 12(b)(6)

Finally, the Moving Defendants argue that the Court should dismiss the Fraudulent Inducement —Misrepresentation claim against MarcellX under Rule 12(b)(6) because plaintiffs fail to allege any facts supporting their claim.  The Moving Defendants assert that the Second Amended Complaint contains no allegations of any representations, fraudulent or otherwise, made by MarcellX.  Plaintiffs respond that the Second Amended Complaint alleges that MarcellX made fraudulent representations through its agents—including Mr. Thompson, Mr. Sparks, and Mr. Winckler—which are sufficient to state a claim against MarcellX.  The Court agrees.

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Complaint must contain facts sufficient to state a claim for which relief may be granted.  *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (citation omitted).  When deciding a motion to dismiss for

23

failure to state a claim, the Court must "accept as true all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff." *Id.* (citation omitted).

> Under Kansas law, the elements of fraudulent inducement are:
>
> (1) [t]he defendant made false representations as a statement of existing and material fact; (2) the defendant knew the representations to be false or made them recklessly without knowledge concerning them; (3) the defendant made the representations intentionally for the purpose of inducing another party to act upon them; (4) the other party reasonably relied and acted upon the representations; (5) the other party sustained damages by relying upon the representations.

*Stechschulte v. Jennings*, 298 P.3d 1083, 1096 (Kan. 2013) (citations omitted). "A representation is material when it relates to some matter that is so substantial as to influence the party to whom it is made." *Id.* (citations omitted).

"'Generally, a corporation is bound by the acts of its duly authorized officers or agents acting within the scope of their authority.'" *Anderson v. Heartland Oil & Gas, Inc.*, 819 P.2d 1192, 1200 (Kan. 1991) (quoting *Exec. Fin. Servs., Inc. v. Loyd*, 715 P.2d 376, 378 (Kan. 1986)). "A corporation is also liable for the torts of its agents when committed within the scope of its agents' authority and course of employment even though it did not authorize or ratify the tortious acts." *Id.* (citing *Kline v. Multi–Media Cablevision, Inc.*, 666 P.2d 711, 713 (Kan. 1983)).

Viewing the factual allegations in the Second Amended Complaint in the light most favorable to the plaintiffs, the Court finds that they allege sufficient facts to state a claim for fraudulent inducement against MarcellX. In the Second Amended Complaint, plaintiffs allege that during the times relevant to this lawsuit, Mr. Thompson, Daniel Prushnok, and David Prushnok were the owners and agents of MarcellX. Doc. 20 at ¶¶ 6, 11, 12, 15. Plaintiffs also claim that Mr. Winckler and Mr. Sparks, as well as defendants Jason H. Brody and Bradley A. Brothers, acted as agents of or coconspirators with MarcellX to defraud plaintiffs. *Id.* at ¶¶ 7, 8, 9, 10, 15. Specifically, plaintiffs allege: "Thompson, Winckler, Welty and Sparks were acting

as agents of . . . MarcellX" when they made alleged fraudulent misrepresentations.  *Id.* at ¶ 113.

Because a corporation is bound by the acts of and is liable for torts committed by its agents under

Kansas law, the Court considers the fraudulent misrepresentations allegedly made by these

defendants-agents as ones made by MarcellX for purposes of this motion.

Also, the Second Amended Complaint contains numerous allegations that MarcellX,

through its agents, communicated material misrepresentations to plaintiffs.  Plaintiffs claim

MarcellX's agents intentionally sent false emails, solicited the plaintiffs in person, and fabricated

progress reports about Fund II.  *See* Doc. 20 at ¶¶ 28, 31–32, 35, 41, 47, 49, 53, 57, 59–60, 65,

67, 69, 76, 78.  Plaintiffs allege they relied on these misrepresentations, which promised

profitable investment and ultimately influenced plaintiffs to part with $1,200,000.  *See id.* at ¶¶

61, 80, 114.  These allegations assert sufficient facts to state a claim against MarcellX for

fraudulent inducement.  The Court therefore denies the Moving Defendants' motion to dismiss

plaintiffs' Fraudulent Inducement —Misrepresentation claim.

## IV.    Conclusion

For the reasons set forth above, the Court denies the Moving Defendants' Motion to

Dismiss or, in the Alternative, Transfer (Doc. 46).

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants MarcellX LLC,

David Prushnok, and Daniel Prushnok's Motion to Dismiss or, in the Alternative, Transfer (Doc.

46) is denied.

**IT IS SO ORDERED.**

**Dated this 30th day of September, 2015, at Topeka, Kansas.**


                                       **s/ Daniel D. Crabtree**
                                       **Daniel D. Crabtree**
                                       **United States District Judge**